Mr. Warner, for appellants.
Mr. Seymour, for libellants.

JOHNSON, Circuit Judge. In the case of The Margaret [94 U. S. 494], Oct. term, 1876, the supreme court of the United States has restated the rules of law relating to the duties and responsibilities of tugboats. Mr. Justice Swayne, in giving the opinion of the court, says: "The tug was not a common carrier; and the law of that relation has no application here. She was not an insurer. The highest possible degree of skill and care were not required of her. She was bound to bring to the performance of the duty she assumed reasonable skill and care, and to exercise them in everything relating to the work until it was accomplished. The want of either in such cases is a gross fault, and the offender is liable to the extent of the full measure of the consequences. The port of Racine was the home port of the tug. She was bound to know the channel, how to reach it, and whether, in the state of the wind and water, it was safe and proper to make the attempt to come in with her tow. If it were not, she should have advised waiting for a more favorable condition of things. If what occurred was inevitable, she should have forecasted it, and refused to proceed."

Applying the principles thus stated to the case now in hand, the fault of the tug occasioned the loss for which the libellants have proceeded. The tug was in her own port; the Eugenia was not, but in a port with which her master was unacquainted. The tug undertook the duty of placing the Eugenia in safety at the dock to which she was bound. This duty resulted from her taking the tow in charge, and we think as by special agreement. She is to be charged with the possession of the common knowledge of the harbor, which the navigators of the harbor are shown to have possessed, generally. That those in charge of the tug, in fact did not possess this knowledge is in itself a fault for the consequences of which she is responsible. It was a fact well known to the navigators of the harbor of Bridgeport that the dock at the steel works was not a safe place in all its extent for a vessel to lie during the ebb tide. A former stone wharf had slid into the water and made a hummock, which might break a vessel's back or throw her outward upon her side as the tide fell. Of this fact the master of the tug was ignorant, and he thus placed the Eugenia in a position where she was exposed to these dangers. When the tide went out, she fell over upon her side, part of her deck load slid off into the water, and when the tide came in again,

## Case No. 7,282.

JENNINGS v. MULLER.[1]

The KATE MILLER.

Circuit Court, D. Connecticut. 1876.

[1] [Not previously reported.]

she filled and sank, or rather did not rise from the bottom where she was lying.

Some contention was had as to directions claimed to have been given by the captain of the tug to the Eugenia to breast off from the dock, and which it was claimed would have proved her safety from the injury which she sustained. To this it is a sufficient answer that the master of the tug, being ignorant of the danger to be guarded against, gave the direction without any reference to the real source of danger; and it was given and received as having no particular application to anything peculiar in the bottom of the place where the Eugenia was left. It was therefore not adapted nor intended to give any special warning or instruction as to the management of the Eugenia, and is a circumstance of no moment in the cause. The Eugenia came to the outside of the harbor of Bridgeport in tow of the Terror, under a contract with the Eastern Transportation Company from New York. The Kate Miller took her in tow, under a contract with that company from which she was to receive her pay for the service. It is, however, well settled that the obligation of the tug springs from her undertaking the towing of the vessel, and does not depend upon the contract being or not being with the vessel towed. It results from the relation which the tug assumes to the vessel towed, taking it into its entire control, by its possession of the motive and directing power. The Deer [Case No. 3,737]; The Brooklyn [Id. 1,938].

I concur entirely in the ruling expressed by Judge Shipman in deciding the case in the district court. I ought, perhaps, to add that I have examined the cases of The Belle [Case No. 1,269], and of Dowdall v. Pennsylvania R. Co. [Id. 4,038], recently decided by Mr. Justice Hunt, but do not find either of them relevant to the questions involved in this case.

There must be a decree for the libellants in the usual form, which, if necessary, may be submitted for settlement on notice.